Good morning, Your Honors, and may it please the Court. My name is Robin Wolpert, and I represent the appellant Teresa Ela in this matter. With me at counsel table is Moses DeWitt of the DeWitt Law Firm from Orlando, and also my colleague Sonia Miller-Van Oort from Sapensha Law Group. This case involves two issues and first impression under the Driver's Privacy Protection Act, the DPPA. Appellant respectfully requests the Court to reverse the District Court's decisions on liquidated damages and attorney's fees. More specifically, we ask the Court to articulate the following rule of law. Under the plain language of the DPPA, the lowest possible liquidated damages award for a violation is $2,500, and that cumulative liquidated damages are not only permissible, they are required, whereas here, the jury found 101 violations of the DPPA. What does the word may mean? What does the word may mean, Your Honor? Where do you get the word required? There are several places, and I would turn, let me start with the text of the statute itself. So, Your Honors, I will begin with section 2724 of the DPPA. The first part, part A, talks about a cause of action. A person who knowingly obtains, uses, or discloses shall be liable, and a person may bring a civil action in U.S. District Court. So there is liability for a violation of the DPPA, shall. Then the statute goes on in section B to remedies. The court may award actual damages but not less than liquidated damages in the amount of $2,500. That phrase itself mandates an award. It doesn't say for each violation. Pardon, Your Honor? It doesn't say for each violation. Congress knows how to write a statute, doesn't it? It does know how to write a statute, Your Honor, and there are a plethora of examples on many sides of this case regarding how Congress may or may not fill the silence of whether there are cumulative liquidated damages. We saw that from a police brief, as well as the brief submitted by IMLA, the International Municipal Lawyers Association. But as we point out in our reply brief, the statutes that were cited by both Appley as well as IMLA are not apposite or controlling here, mainly because the language of those statutes is different, as this court- No, Your Honor, not when there was an error of law based on statutory interpretation. In our position here, Your Honor, is that the district court did not properly construe the requirements of the DPPA. Counsel, you're missing the point. Suppose we adopted the $2,500 minimum statutory fee for every violation. You still have to deal with the word may. Your Honor, there are several places. Again, the statute- You have to deal with the word may, and how do we deal with the word- You have to write an opinion for us dealing with the word may. So let me- Tell us how to do may without shall. That's what your argument is. Your argument is shall, and we can't use shall. We have to use may, and so you have to tell us how to write the opinion. First of all, in Kehoe, this court said itself that the absence or a silence in the statute should not be filled with language or interpretation in a manner that- Let's get back to may. Tell us about may. In Kehoe, this court again- No, no, don't tell me Kehoe. You just tell us how we deal with may. How we deal with may- How do we deal with may? The structure of analysis is found in Pichler, the district court decision in Pichler on remand from the Third Circuit. What does it say about the word discretion, may? The court said that the word may actually means shall in this context. What court said that? Pardon me? What court said that? That was the district court in Pennsylvania on remand from Pichler's Third Circuit decision. Kehoe itself says may implies a degree of discretion. The discretion lies in the list of remedies a court may authorize. It doesn't give discretion regarding actual damages and liquidated damages, Clause A of Section B in that part of the remedy statute, Your Honor. That A is shall? Is that what you're telling us? A is shall. A is shall. So where did Congress put that word? Congress sometimes, as the U.S. Supreme Court- No, just tell us where Congress put the word shall. Tell us where in the statute they put it. Your Honor, the fact that the word shall is not there does not mean that the word may is not mandatory. That was the thrust of the district court's decision on remand in Pichler where the court- We agree that the word may is mandatory, which means the judge has to exercise discretion. But it doesn't say what the judge has to do. Your Honor, there are many reasons why the court should order that cumulative liquidated damages are not only permissible under the statute but are required here. First, again, the text of the statute requires that there is a cause of action if there is a violation of the statute. And then there is a list of remedies. This court in Kehoe said the word may refers to discretion as to what options the court may award. But the option this court identified- The opinion in Kehoe, and it was a very well-written opinion, Kehoe v. Fidelity, uses it says, may fashion what it deems to be an appropriate award. So the court in its discretion may fashion what it deems to be an appropriate award. And then, Your Honor, the court goes on to say that one of the options that the district court has is to award, quote, actual damages but not less than liquidated damages in the amount of $2,500. In other words- But it doesn't say for each violation. And if the court wants to award Ms. Ella more money, it could do so under subsection 4, which gives the court the discretion to order such other preliminary and equitable relief as the court deems to be appropriate. And the court didn't do that in this case. The court could have awarded more money under subsection 4, couldn't it? Subsection 4, are you referring to preliminary and equitable relief? Well, the punitive damages request was dropped, but then you go under section 3, reasonable attorney's fees, and then subsection 4, such other preliminary and equitable relief, and then these are the key words, as the court deems to be appropriate. So that suggests a certain measure of discretion on the part of the district judge. The judge here could have awarded her more damages, could have awarded her preliminary or equitable relief as the court deems to be appropriate, but it didn't do so. It awarded $2,500. Your Honor, even if this court concludes that the award of cumulative liquidated damages is discretionary and is not mandated by the DPPA's plain language, the district court abused that discretion in not awarding cumulative liquidated damages here. What were the actual damages in this case? You do not have to demonstrate actual damages. It says actual damages under A. We read that off, too? In other words, you have to prove under A actual damages, but regardless of whether or not you prove them, you get $2,500. So the district court, as I understand it, said basically you have no damages, but I'll give you $2,500, which is what the statute requires. And that was an error of law or an abuse of discretion by the district court, because this court... What actual damages did you have? This court in Kehoe, Your Honor, however, said that you did not... Answer the question to counsel. He wants to know what actual damages you had. The jury did not find actual damages. In fact, the jury said no actual damages, didn't it? It did, and that does not preclude relief under the DPPA, because as this court already has held... It doesn't preclude, but it doesn't mandate it either. Otherwise, it would be ironic to find no actual damages and then multiply 2,500 by 101. It would really nullify the jury's finding. And, Your Honor, the opposite result would be achieved if the court didn't award cumulative liquidated damages here, because the jury had evidence in front of it of 266 accesses under FCIC, NCIC, and then the David databases. And the jury actually found 101 violations. Do you want to address the attorney fee thing, or do you want to abandon that point? We are not abandoning the point, Your Honor. You're going to run out of time if you don't talk about it. Regardless of what the court determines on whether cumulative liquidated damages were appropriate or not, the district court abused its discretion in terms of awarding only 10% of the attorney's fees. The reasons are set forth in the brief, but mainly this is a classic abuse of discretion because the court did not consider all the factors set forth in Johnson and also in Bivens in evaluating whether the lodestar was reasonable. Moreover, there is no reason to believe that the lodestar was unreasonable. The court had a fundamental misunderstanding of what constituted success below. Liquidated damages are not nominal damages. They are presumed damages. And the court discounted the liquidated damages by designating it as such. In addition, actual damages are only one factor. And under the DPPA and under Kehoe, actual damages are not a prerequisite for liquidated damages. Isn't the problem with your opinion that the district court never determined the lodestar? It never did, Your Honor. There's a procedural error before we get anywhere about the other factors. Isn't that the issue? That's correct, Your Honor. The first step is to determine what the lodestar is and the district court didn't do that. What are you asking for, a remand for the district court to figure out what the lodestar is and then apply all the other factors? We are asking the court to do that, Your Honor. However, we're asking the court to also provide instructions to the district court since this is an issue of first impression regarding award of attorney's fees under the DPPA. The district court's emphasis on actual damages is inappropriate, whereas here, liquidated damages, presumed damages constitute the essence of success. And the jury found 101 violations of the DPPA. The second thing is that this case was not a slam dunk for Appellant Ella. This case was vigorously defended by DeStefano throughout the proceedings, three years worth of litigation, including challenges to the constitutionality of the DPPA, and so forth, a three-year course of litigation. Finally, Your Honor, the court inappropriately blamed Ella for the cost of this, and we would ask the court to comment and provide direction to the district court regarding the ability of the plaintiff to bear the burden of a defendant's vigorous defense. Finally, I would just say one quick thing about the DPPA. Make it quick because you're out of time. I certainly will, Your Honor. The district court judged whether this was an egregious violation of the DPPA and substituted its preferences for those of Congress. Congress has decided to protect driver's privacy. Whether a district court or this court believes otherwise is immaterial and raises separation of powers concerns. This was a law enforcement officer. I think we understand your point. Thank you, Your Honor. Going back to... You've saved some rebuttal time. Thank you, Your Honor. Mr. Palmer? May it please the court. I am Bobby Palmer representing the appellee Kathleen DeStefano. In this case, it's important to note that in the first amended complaint, which is the operative complaint, the appellant claimed that my client not only violated the DPPA, but also that she was damaged in the amount of more than $1 million in compensatory damages. The first amended complaint also alleged entitlement to punitive damages as well as injunctive relief. The appellant withdrew the claim for punitive damages and did not pursue any kind of injunctive relief. The case went to trial. None of that is really relevant, is it? I beg your pardon, Your Honor? None of that is really relevant to the issue that we have to decide on appeal, is it? I mean, the only issue is whether or not the court... I agree, Your Honor. Let me get to the heart of the matter. The heart of the matter in this appeal is a disagreement over the remedies affordable under the DPPA, specifically 18 U.S.C. section 2724, subsection B. We're essentially just interpreting the statute, and you can see how, based on the questions, we're looking at the word that Congress used, used the word may, and so your argument essentially is that that word, in addition to our interpretation of a statute in Kehoe versus fidelity, gives the court discretion in determining how much that she's entitled to in liquidated damages. That is correct, Your Honor. All right, and she says there were 101 violations, and so the way you look at this statute is you get $2,500 for each violation, and why is that an unreasonable interpretation of the statute? I'll tell you, Your Honor. As the court has already pointed out, what the statute says is the court may award actual damages, but not less than liquidated damages in the amount of $2,500. The DPPA does not say the court must award actual damages, but not less than liquidated damages in the amount of $2,500 per each violation. In order for this court to believe that the appellant's argument is valid, the court would essentially have to pencil in words into the DPPA that aren't there. We know from this court's pronouncement in the Kehoe case that if you're talking about the analyzation of a statute, you start by looking at the statute itself, because it is presumed that Congress knows what it says and means what it says when it enacts a statute. Congress did not use the word shall, it used the word may, and there is no basis under the plain language of the DPPA that would support an argument that it's an abuse of discretion for the district court to not award $2,500 for each violation. So if you violate this act by looking at someone's driving record without a law enforcement purpose, you'll pay for your first violation, but all the rest are free? No, Your Honor. I believe that it is within the court's discretion based on the Kehoe case. And as the court has pointed out, in the Kehoe case, the court has the discretion to consider the totality of the circumstances in the case and award an appropriate award within its discretion. Well, what was the discretion exercised? I think counsel pointed out some factors on their abuse of discretion standard that may have been violated here. What's your view of how the district court exercised the discretion here? What factors did the court take into account? Well, the court took into consideration the fact that there was no disclosure or use of the information that was viewed by my client. And if you look at some of the case law outside the jurisdiction, whether the information that is viewed is also used and disclosed, it may make a difference. But under the Kehoe case, this court had the discretion to do exactly what it did. And the court considered not only the fact that . . . Did the court ignore her argument that every time she looked at my private information, she violated my privacy? Did the court ignore that argument that she made? She's saying I'm injured every single time she opened up my driving record. My privacy was violated every single time. So, she could argue that the court abused its discretion by failing to take that into consideration in determining . . . Well, what the court took into consideration was the evidence at this case. I mean, I can understand why the appellant wants to create out of thin air a use or disclosure of this information, but that was not the evidence. But what's the answer to that question? Wasn't her privacy violated every single time she opened up her driving record? Your Honor, the DPPA does, in fact, create a right to privacy. Each time she viewed that information, she violated the statute. But that's not the issue here. The issue is not how many times she violated the statute, but whether this court abused its discretion in following the plain language of the DPPA and awarding only $2,500. I think the court took into consideration all the totality of the circumstances in this case in awarding what it awarded. The court also took into consideration that there was no vindication of any public interest in here. This was a lawsuit filed by the appellant against her ex-husband's wife because she viewed but never used or disclosed information on a governmental website showing driver's license information. This was a lawsuit that vindicated only personal interest, not public interest. The court took that into consideration. We know that based upon the court's order. The court took into consideration that the information was never used or disclosed. And there is no basis for the argument that the district court abused its discretion in following Keogh and following the plain language of the DPPA. When Ms. DiStefano opened up that item, that file on the computer 101 times, was it the same thing on there each time? I'm sorry, sir? Was it the same information that she viewed every time? Yes, Your Honor. The unequivocal evidence at the trial of this case was that not only did she never use or disclose the information, but she viewed the same information over and over and over again. Now, at the trial, admittedly, she could not give an explanation why she did that. I guess what I'm still struggling with is, if she opened it up 101 times, her argument was my privacy was violated 101 times, not one time. You don't get to open it up one time and then you get carte blanche to open it up as many times as you want after that. Certainly, the jury found that she violated the statute 101 times. The jury also found that she was not harmed in any way by those alleged breaches of right to privacy. You can get liquidated damages in the absence of harm? Absolutely. There was a technical violation of the statute? Is that your argument? There was no harm? The Keogh case does say that you don't need actual damages to get liquidated damages. In this case, the court took into consideration that and took into consideration that the court did find that she violated the statute 101 times. She's saying, yep, the jury said no actual damages, but I was still harmed. There's a difference between being actually damaged and harmed, isn't there? If I was harmed 101 times. Well, the jury didn't agree with that. She put on lots of evidence that she was harmed by each of these views. The jury did not agree with that. The jury said she was not harmed in any way. Now, that does not mean that she's not entitled to a liquidated damage. In fact, that's exactly what the district court did. The district court exercised its sound discretion in awarding the appellant $2,500 based upon the plain language of the DPPA. So you can get liquidated damages without harm? That's what the Keogh case says. You can get liquidated damage without actual harm. She did not have actual harm. She got a liquidated damage based upon the clear language of the DPPA. I guess I'm trying to figure out, is there a difference between harm and actual damage? Your argument is that there's no difference? I think the statute speaks to that. The statute talks about actual damages. And actual damages, I believe, are compensatory damages. I think I understand.  Yes, Your Honor. The lawyer only got compensated for 48 hours of work. That's not a lot of time for what it appears when you look at the record, what was put in this case. 48 hours of work was all he was compensated for? Well, Your Honor, I believe the court did not abuse its discretion by following the clear pronouncements of this court. And what the court did was, first of all, they considered the case law from this circuit. Did the court abuse its discretion by not coming up with a lodestar? Well, Your Honor, according to the case law... Can you answer that yes or no and then explain? I do not believe that was an abuse of discretion. I'll tell you what. Do you agree that the court did not do that? I did not see within the order that the court did it. I don't know whether the court... All we can do is review the order. Yeah. So the question becomes whether that's essential under our precedent, namely Johnson. I would point the court to... Is a lodestar... Can you answer that one yes or no? Is a lodestar essential? I will tell you why... Is it? It isn't. It is not? I'll tell you why. In this particular case... It's not essential is your point? I'll point to you exactly what I mean. Can you tell me whether it's essential or not first and then explain? Okay. It's essential or not? Under the precedent of this court... Is it essential or not? Can you answer that yes or no? In this particular case... As a general proposition, is a lodestar essential? Yes, Your Honor. All right. You can explain why it is not in this case. I will, Your Honor. All right. This court, in its prior precedent, has approved the utility of across-the-board percentage cuts by district courts in either the number of hours claimed or in the final lodestar figure. In this particular case, the plaintiff provided a 49-page application. In this particular case, the district court did not abuse its discretion in applying an across-the-board percentage cut to appellant's attorney's fees claim, based upon the clear precedent from this court. The court also took into consideration that this case was one with very limited success on the part of the appellant. Was it a one-day trial? Sorry?  Was this a one-day trial? The trial started on September 8th, and closing arguments were on September 11th. This was a three-day trial? Yes. He got compensated for 48 hours of work? Well, Your Honor, it's not an abuse of discretion for the court to apply across-the-board cut in a case in which the plaintiff claimed more than a million dollars in compensatory damages and received 0% from the jury. Did the court ever consider what the hourly rate at which the lawyer was compensated? There was no indication of that in the order, Your Honor. How could you figure out a lodestar if you don't know the hourly rate? Would it have been $10,000 an hour or $5,000 an hour? I don't know. Your argument is not necessary, but you have to tell us why it's not necessary. In this particular case, I don't think it was cut. What's the rationale? Why is it not necessary? Because this court has approved the utility of across-the-board. Have we ever said the lodestar is not necessary? I'm sorry? Have we ever said the lodestar is not necessary? I don't recall that, Your Honor. I think we have your point and your time's up. Thank you, Your Honor. In closing, We already have said that. Thank you. Thank you, Your Honor. Thank you, Your Honor. I'd like to begin by addressing the argument of opposing counsel that viewing the same information over and over again was not necessarily to be seen as a serious violation of the DPPA. Despite Ms. DeStefano's first access and her allegations or claims that she was constantly reviewing the same information over and over again, she was actually monitoring the database for changes in information regarding appellant. She wanted to see if the status changed. And so she was obtaining new information each time. She was obtaining new information about whether the status changed. In addition, I'd like to point out that the DPPA, in evaluating whether this is a technical violation or not a serious violation or something that justifies a gross discount of not only attorney's fees but the liquidated damages award, the district court seemed to place weight on the fact that this was some sort of personal relationship or dispute. But the DPPA doesn't create an exception for personal reasons when those personal reasons drive the access to private data. Doesn't it factor whether or not you commercially benefited from the violation? Isn't that a reasonable factor to take into account or whether or not you were just satisfying your own curiosity? Your Honor, the DPPA makes no such distinction. Those are the purpose. Let me ask you a question here because your argument, I was looking at the statute, which you think it really reads the court shall award instead of may award. But even if you put shall award, then you go to A and it says actual damages. So if there were no actual damages, it wouldn't matter whether it said may or shall. Your Honor, the actual damages is modified by not less than liquidated damages. And so the court shall award either actual or liquidated damages. No court in the country has said that if you have a violation of the DPPA, you get zero damages. In fact, the district court on remand in Pitchler rejected that point of view that was advocated by the court. What would you multiply 101 by, $2,500? You think this mandates $2,500 per violation regardless of actual damages? Yes, because in Kehoe, this court said that actual damages is not a prerequisite for getting liquidated. But moreover, Your Honor, the district court abused its discretion in awarding $24.75 per violation. We have 101 separate accesses. It awarded 2,500 for one violation, right? It did. But given that there are 101, if you divide that by 101, we're talking about essentially $25 per violation. The court abused its discretion in driving its analysis of liquidated damages based on actual damages. And for that reason, it was error. Thank you, Your Honors. Court will be in recess.